UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Scott Wood,

    Petitioner,

v.

Warden, Noble Correctional Institution,

    Respondent.

Case No. 2:23-cv-3275

Judge Michael H. Watson

Magistrate Judge Merz

## OPINION AND ORDER

Scott Wood ("Petitioner") petitioned for a writ of habeas corpus, raising three grounds (four claims) for relief. Petition, ECF No. 1. The Magistrate Judge issued a Report and Recommendation ("R&R") and a supplement thereto ("Supp. R&R"), recommending the Court dismiss Petitioner's petition as procedurally defaulted. R&R, ECF No. 28; Supp. R&R, ECF No. 31. Petitioner timely objects. Obj., ECF No. 29; Obj., ECF No. 32.

### I.    STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 72(b), the Court determines "de novo any part of the magistrate judge's disposition that has been properly objected to."

### II.    PROCEDURAL HISTORY

Petitioner was convicted of various drug crimes and sentenced in the Perry County Court of Common Pleas. Ex. 20, ECF No. 15 at PAGEID # 144–54. He

directly appealed his conviction and sentence to the Ohio Fifth District Court of Appeals ("Fifth District"). Ex. 22, ECF No. 15 at PAGEID # 162.

Petitioner raised four assignments of error on direct appeal: (1) the verdicts "were not supported by sufficient evidence and were also against the manifest weight of the evidence"; (2) "the trial court erred . . . by imposing additional prison terms for being a major drug offender; (3) "the trial court erred . . . by overruling [Petitioner's] motion to suppress evidence"; and (4) Ohio's statutory scheme for indefinite prison terms violated Petitioner's state and federal due process rights. Ex. 23, ECF No. 15 at PAGEID # 167 (cleaned up).

The Fifth District "affirmed in part and vacated in part" the judgment. Ex. 25, ECF No. 15 at PAGEID # 209–23. Specifically, it affirmed Petitioner's convictions but vacated his sentence and remanded for re-sentencing, concluding the trial court violated an Ohio statute by enhancing Petitioner's sentence for being a major drug offender. *See generally id.* Petitioner was resentenced in common pleas court without the enhancement. Ex. 26, ECF No. 15 at PAGEID # 225–30.

Petitioner did not appeal the re-sentencing to the Fifth District. But, several months later, he filed a notice of appeal and moved for leave to file a delayed appeal in the Supreme Court of Ohio, seeking to belatedly appeal the Fifth District's decision.[1] Ex. 27, ECF No. 15 at PAGEID # 231–32; Ex. 28, ECF

---

[1] In the period between the re-sentencing and the motion for delayed appeal, it seems Petitioner attempted to appeal the Fifth District's decision, but the Supreme Court of

No. 15 at PAGEID # 233–39. The Supreme Court of Ohio granted Petitioner's motion for a delayed appeal and ordered Petitioner to file his memorandum in support of jurisdiction by May 11, 2023. Ex. 29, ECF No. 15 at PAGEID # 263. The Court did not timely receive said memorandum and dismissed the appeal for failure to prosecute. Ex. 30, ECF No. 15 at PAGEID # 264. Petitioner later moved again to file a delayed appeal, but the Supreme Court of Ohio denied the motion. Ex. 31, ECF No. 15 at PAGEID # 265–66; Ex. 32, ECF No. 15 at PAGEID # 267–89; Ex. 33, ECF No. 15 at PAGEID # 290.

### III.  ANALYSIS

Before beginning the analysis, it helps to set forth Petitioner's federal grounds for relief and explain how they differ from the claims raised on direct appeal.

In Ground One of the habeas petition, Petitioner alleges he was convicted based on insufficient evidence and against the manifest weight of the evidence. Petition at 4, ECF No. 1. The Court construes those as separate claims. Ground Two argues the trial court violated Petitioner's Eighth and Fourteenth Amendment rights by imposing additional prison terms under Ohio's major drug offender laws. *Id.* at 4–5. Ground Three argues the trial court violated Petitioner's Fourth Amendment rights when it failed to suppress unlawfully obtained evidence.

---

Ohio rejected the notice of appeal as untimely. *Compare* S. Ct. Prac. R. 7.01(A)(1)(a)(i) (setting forty-five-day deadline for jurisdictional appeal), *with* Ex. 27, ECF No. 15 at PAGEID # 231 (noting Nov. 17, 2022 "Received" stamp).

Although several of Petitioner's later filings reference the Sixth Amendment, his petition does not contain an ineffective assistance of counsel claim.

Petitioner's petition differs from his direct appeal in two ways. First, Petitioner raised a federal due process claim based on Ohio's scheme of indefinite prison terms on direct appeal but did not include it in his habeas petition. Second, as will be shown below, the basis for Petitioner's "major drug offender" claim on direct appeal was state law, but he alleges a violation of federal law in his habeas petition.

### A. Two of Petitioner's Claims Fail on the Merits, Obviating the Need to Analyze Procedural Default.

Respondent has raised procedural default as a defense to each of Petitioner's claims, but "[t]he U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) (citation omitted).

Here, the procedural default analysis of Petitioner's "manifest weight of the evidence" and Fourth Amendment claims is complicated, so the Court elects to forgo it and turn directly to the merits.

#### 1. Manifest Weight of the Evidence

A claim that a defendant was convicted against the manifest weight of the evidence is "not a federal constitutional claim" and is thus not cognizable on

habeas review. *Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1986).[2] This claim therefore fails.

### 2. Unlawful Search and Seizure

Although the Fourth Amendment protects against unlawful searches and seizures, U.S. Const. amend. IV, not all violations warrant habeas review. Indeed, "the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial"[3] so long as "the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim[.]" *Stone v. Powell*, 428 U.S. 465, 482 (1976).

Thus, a Fourth Amendment claim[4] is cognizable on habeas review only if "the state provided no procedure by which the prisoner could raise his Fourth Amendment claim, or the prisoner was foreclosed from using that procedure." *Cotham v. Boyd*, No. 24-5343, 2024 WL 4541532, at *3 (6th Cir. Sept. 19, 2024)

---

[2] *See Hoffman v. Lazaroff*, No. 18-3439, 2018 WL 5849894, at *3 (6th Cir. Sept. 17, 2018), for a fuller explanation of why "insufficiency of the evidence" claims are cognizable on habeas but "manifest weight of the evidence" claims are not.

[3] This is because the exclusionary rule—which precludes admission of evidence at trial if it was obtained in violation of the Fourth Amendment—"is not a personal constitutional right." *Stone*, 428 U.S. at 486. "It is not calculated to redress the injury to the privacy of the victim of the search or seizure" but rather to deter police misconduct. *Id.* (citation omitted).

[4] Ground Three raises only a Fourth Amendment claim despite Petitioner's argument that the erroneous denial of the suppression motion also violated his Due Process rights under the Fourteenth Amendment. *Hoffman v. Harris*, No. 16-3994, 2017 WL 3951852, at *2 (6th Cir. April 5, 2017) ("The Fourth Amendment expressly protects against unreasonable searches and seizures. Hoffman's attempt to bootstrap a more general substantive due process argument to his Fourth Amendment ground must therefore fail." (internal citation omitted)).

(internal quotation marks and citation omitted). This is true even if the underlying Fourth Amendment claim is meritorious.[5] *E.g., Campbell v. Warden*, No. 2:23-cv-3332, 2024 WL 4871601, at *4 (S.D. Ohio Nov. 22, 2024) ("[T]he *Stone v. Powell* bar applies regardless of the merits of a habeas petitioner's Fourth Amendment claim[.]").

In the Sixth Circuit, the "opportunity for full and fair consideration means an available avenue for the prisoner to present his claim to the state courts," and the habeas court does not inquire "into the adequacy of the procedure actually used to resolve that particular claim." *Good v. Berghuis*, 729 F.3d 636, 639 (6th Cir. 2013) (internal quotation marks omitted).

Petitioner concedes that he moved the state trial court to suppress the allegedly illegally obtained evidence, that he obtained a hearing on those motions, and that he appealed the denial of those motions to the Fifth District. Petition at 5, ECF No. 1. The record supports those concessions. ECF No. 15 at PAGEID # 61–71, 75–94, 102–16, 121, 162–87, 209–23, 311, 335–37, 350–51, 369–71. This is sufficient under *Stone* to preclude review.[6] *E.g., James v.*

---

[5] Petitioner's requests to expand the record are therefore **DENIED** as moot. His motions argue the additional records would prove the merits of his habeas claims and do not plausibly suggest the additional records would demonstrate he was subject to a sham proceeding.

[6] Nothing suggests the opportunity afforded to him was a "sham" to potentially remove it from *Stone's* bar. *Good*, 729 F.3d at 639 ("In the absence of a sham proceeding, there is no need to ask whether the state court conducted an evidentiary hearing or to inquire otherwise into the rigor of the state judiciary's procedures for resolving the claim."); *Boyce v. Warden, Chillicothe Corr. Inst.*, No. 23-3996, 2024 WL 5112651, at *4 (6th Cir. June 20, 2024) ("Adverse suppression rulings alone are not sufficient to show that a court deprived a petitioner of an opportunity to bring a Fourth Amendment claim."

*Schroeder*, No. 23-1160, 2023 WL 5446896, at *2 (6th Cir. June 1, 2023) ("In this case, James filed a motion to suppress. The trial court denied the motion after hearing argument from both parties. James appealed, and the Michigan Court of Appeals concluded that the appeal lacked merit and affirmed. That was sufficient to show that James had a full and fair opportunity to litigate his motion to suppress in state court." (citation omitted)). Petitioner's Fourth Amendment claim is therefore not cognizable on habeas review.

### 3. Conclusion

The "manifest weight of the evidence" and Fourth Amendment claims fail on their merits, and the Court will now consider the procedural default of only Petitioner's other claims.

### B. Petitioner Procedurally Defaulted his "Insufficiency of the Evidence" and "Major Drug Offender" Claims when he Failed to Timely Submit a Memorandum in Support of Jurisdiction to the Ohio Supreme Court.

The Government argues Petitioner procedurally defaulted these claims when the Supreme Court of Ohio dismissed his appeal for failure to timely file a memorandum in support of jurisdiction. Return of Writ 12–13, 19, 22–24, ECF No. 16. Petitioner does not meaningfully dispute that contention.

The Court agrees. As set forth above, the record demonstrates Petitioner failed to timely appeal the Fifth District's decision. The Supreme Court of Ohio

---

(citation omitted)); *Hoffman*, 2017 WL 3951852, at *3 ("Merely failing to expressly address a defendant's arguments is not sufficient to render the review mechanism a failure or to label the proceeding a sham.").

forgave that default by granting Petitioner's motion for leave to file a delayed appeal, but it then dismissed the appeal for failure to prosecute when Petitioner did not timely file his memorandum in support of jurisdiction.

The Supreme Court of Ohio's dismissal for failure to prosecute is an independent and adequate state ground for purposes of procedural default. *See, e.g., Suggs v. McConahay*, No. 21-3281, 2021 WL 10161588, at *2 (6th Cir. Sept. 9, 2021) (finding procedural default where the Supreme Court of Ohio granted the petitioner a delayed appeal but ultimately dismissed for failure to timely file a memorandum in support of jurisdiction); *Agostini v. Collins*, No. 20-3028, 2020 WL 3815671, at *2 (6th Cir. June 15, 2020) ("As the magistrate judge explained, Agostini raised his claims on direct appeal to the Ohio Court of Appeals, but his appeal to the Ohio Supreme Court was dismissed for want of prosecution for his failure to file a jurisdictional memorandum. . . . Because Agostini failed to comply with the procedural rules of the Ohio Supreme Court and it did not consider the merits of his claim, his claim is defaulted."); *Harrison v. Anderson*, No. 96-3296, 1997 WL 52906, at *1 (6th Cir. Feb. 7, 1997) ("All of the requirements for a procedural default are met in this case. Harrison did not comply with the Ohio Supreme Court's procedural rule that required him to file a memorandum in support of jurisdiction. The Ohio Supreme Court invoked this procedural rule as the basis for its decision to reject review of his claims." (citation omitted)).

The question, then, is whether Petitioner can overcome the procedural default of these claims through a showing of "cause and prejudice."

1.  **Petitioner has Shown Cause and Prejudice to Overcome the Procedural Default as to Only the Insufficiency of the Evidence Claim.**

    a.  **Cause**

Petitioner argues he can establish cause for the procedural default. Namely, he contends he timely submitted the memorandum in support of jurisdiction with the prison's mailroom, but the prison mail employees held the same for six days and mailed it only one day before the filing deadline, causing it to be late. Reply 3, ECF No. 22; Obj. 8–11, ECF No. 26; Obj. 20, ECF No. 29; Obj. 1–8, ECF No. 32.

The record supports Petitioner's assertion. Exhibit C is a withdrawal slip from the prison cashier. Ex. C, ECF No. 15 at PAGEID # 273. It is dated May 5, 2023. *Id.* But the bottom entry shows the prison did not mail the document until five days later, on May 10, 2023—the day before the deadline. *Id.* Thus, Petitioner submitted the memorandum in support of jurisdiction to the prison employees six days before the filing deadline, and it is safe to assume the prison's failure to timely mail the document caused Petitioner to miss the filing deadline.

Case law supports finding cause in this exact situation. Although the Ohio Supreme Court need not abide by the prison mailbox rule (and was therefore not required treat Petitioner's memorandum in support of jurisdiction as timely filed), abidance with the prison mailbox rule does constitute cause to overcome

procedural default in the Sixth Circuit (at least where a document is submitted to the prison five days before the filing deadline). *Foster v. Warden, Chillicothe Corr. Inst.*, 575 F. App'x 650, 654 (6th Cir. 2014) ("Once a prisoner gives his state court filing to prison officials to be mailed, it is in their control and he no longer has the ability to affect its delivery. If the filing would have been timely filed in the normal course of events but is filed late or never reaches the court, the prisoner has demonstrated cause to excuse the procedural default." (cleaned up)); *Henderson v. Palmer*, 730 F.3d 554, 560 (6th Cir. 2013) ("We abide by the *Maples* panel that when a prisoner submits a petition to the prison mailroom five days prior to a filing deadline and it is not delivered there is cause to excuse the procedural default." (cleaned up)); *Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003) ("Where a pro se prisoner attempts to deliver his petition for mailing in sufficient time for it to arrive timely in the normal course of events . . . the rule is sufficient to excuse a procedural default based upon a late filing.").

Just as in those cases, this Court concludes that Petitioner's submission of the memorandum in support of jurisdiction to prison authorities six days before the filing deadline can constitute "cause" sufficient to overcome procedural default.

But the prison's retention of the document provides cause only if the appeal to the Supreme Court of Ohio could have exhausted Petitioner's remedies. To that end, the Government argues that Ground Two is procedurally defaulted for a separate reason: the formulation of Ground Two in the habeas

petition was never raised in the Fifth District. Return of Writ 17–18, 32–33, ECF No. 16 ("Wood only argued recent statutory changes, and to that extent prevailed in the Ohio Court of Appeals. He never challenged the constitutionality of Ohio's major drug offender statute and never challenged the sufficiency of the evidence as to his being a major drug offender." (citations omitted)). The Court must thus compare Ground Two as it is raised in the petition with how it was raised on direct appeal.

In Petitioner's habeas petition, Ground Two alleges "the trial court erred . . . by imposing additional prison terms for being a major drug offender in violation of appellant's constitutional right to Due Process of Law as guaranteed by the Fourteenth Amendment and Eighth Amendment of the United States Constitution and under the Ohio Constitution." Petition at 4, ECF No. 1. In essence, he argues that the sentence exceeded a state statute, which rendered the sentence federally unconstitutional. *Id.* at 5.

Similarly, Petitioner argued on direct appeal that "the trial court erred to the prejudice of the appellant by imposing additional prison terms for being a major drug offender." Ex. 23, ECF No. 15 at PAGEID # 167–68, 175–78. But on direct appeal, he argued *solely* that the additional prison terms violated Ohio statutes. *Id.* at PAGEID # 175–78. His appellate brief does not even mention the United States Constitution in connection with the additional prison terms.

Accordingly, even if Petitioner had perfected his appeal to the Supreme Court of Ohio, Ground Two—as set forth in the habeas petition—would be

procedurally defaulted for failing to raise it on direct appeal to the Fifth District. The Court therefore **DENIES** Ground Two as procedurally defaulted and will consider whether Petitioner has established prejudice to overcome the procedural default of only the insufficiency of the evidence claim.

### b. Prejudice

The Sixth Circuit has not set forth a consistent test for analyzing prejudice in the procedural default context.

For example, several Sixth Circuit decisions have found prejudice any time the "cause" of a procedural default resulted in a state court's failure to consider the petitioner's claim. *E.g.*, *Foster*, 575 F. App'x at 655 ("Foster was prejudiced by the state court's refusal to hear his ineffective-assistance-of-counsel claim." (citation omitted)); *Maples*, 340 F.3d at 439 ("The prejudice resulting from the procedural default is that the Michigan Supreme Court refused to consider Maples's claim of ineffective assistance of counsel."); *cf. Henderson*, 730 F.3d at 560 (following *Maples* and finding no procedural default bar).

Under this test, Petitioner surely demonstrates prejudice: the Supreme Court of Ohio refused to consider Petitioner's claim due to the untimely receipt of his memorandum in support of jurisdiction.[7]

---

[7] Indeed, under this analysis, it seems the "prejudice" prong of the "cause and prejudice" test would be superfluous. By definition, a petitioner trying to overcome a procedural default will always have been prejudiced by the state court's failure to consider the petitioner's claims on their merits because of the procedural failure.

But that test conflicts with other Sixth Circuit opinions, including *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986), the circuit's leading procedural default case. *Maupin* cautioned against the very analysis done in the above panels, stating, "we need not determine whether any prejudice resulted from the actual procedural default." *Id.* at 139. Instead, *Maupin* requires the petitioner to show that he was prejudiced "by *the alleged constitutional error*[;]" the state court's refusal to consider a claim because of the default is "irrelevant in the prejudice analysis." *Id.* at 138 (citations omitted). Moreover, under *Maupin*, when analyzing prejudice, "the court should assume that the petitioner has stated a meritorious constitutional claim." *Id.* at 139. Nonetheless, the prejudice from such a constitutional violation must be "actual" rather than merely "possible." *Id.*[8]

As in *Maupin*, Petitioner necessarily suffered prejudice if he were convicted based on insufficient evidence. *Maupin*, 785 F.2d at 139–40 ("It is self-evident that a conviction based on insufficient evidence would be actually prejudicial to the petitioner.").

Thus, under either test, Petitioner established prejudice.

---

[8] For the most part, the *Maupin* standard mirrors that explained in a recent United States Supreme Court decision. *See Shinn v. Ramirez*, 596 U.S. 366, 379–80 (2022) ("Then, to establish prejudice, the prisoner must show not merely a substantial federal claim, such that the errors at trial created a possibility of prejudice, but rather that the *constitutional violation* worked to his *actual and substantial* disadvantage." (cleaned up) (emphasis added)).

### c. Conclusion

Based on the above cause and prejudice conclusions, the Court finds Petitioner has overcome the procedural default of his insufficiency of the evidence claim and will now consider the merits of that claim.

## C. Petitioner's "Insufficiency of the Evidence" Claim lacks Merit

Having overcome the procedural default, this Court reviews Petitioner's insufficiency of the evidence claim de novo. *Cf. Cone v. Bell*, 556 U.S. 449, 472 (2009) (citations omitted); *Jones v. Yost*, No. 3:22-cv-352, 2024 WL 579748, at *8 (S.D. Ohio Feb. 13, 2024) ("Because the state courts *ultimately* rejected Petitioner's voluntariness challenge not on the merits, but on the basis of a procedural default, *and* Petitioner was able to overcome that default with a showing of cause and prejudice, the Court finds that Petitioner's claim is entitled to *de novo* review . . . ."(emphasis in original)), *R&R adopted in part and rejected in part by* 2024 WL 3877775 (S.D. Ohio Aug. 20, 2024).

> For insufficiency of the evidence claims, the Court must
>
> consider whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law. [W]e do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury.

*Smith v. Nagy*, 962 F.3d 192, 205 (6th Cir. 2020) (cleaned up).

The Court thus turns to the crimes of conviction and the elements of those crimes. Petitioner was convicted of eleven counts, involving nine distinct crimes:

(1) aggravated trafficking in drugs; (2) aggravated possession of drugs; (3) trafficking in cocaine; (4) possession of cocaine; (5) trafficking in a fentanyl-related compound; (6) possession of a fentanyl-related compound; (7) trafficking in heroin; (8) possession of heroin; and (9) money laundering. Ex. 19, ECF No. 15 at PAGEID # 122–43. The convictions reduce to violations of Ohio Revised Code Sections 2925.03(A)(2), 2925.11(A), and 1315.55(A)(2). *Id.*

Turning first to the drug crimes, for the Section 2925.03(A)(2) convictions (Counts 1, 3, 5, 7, 9), the jury had to find Petitioner (1) knowingly (2) either prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed (3) cocaine, a fentanyl-related compound, and heroin, when he (4) intended to sell or resell the cocaine, fentanyl-related compound, and heroin. 2 OJI-CR 525.03. For the Section 2925.11(A) convictions (Counts 2, 4, 6, 8, 10), the jury had to find Petitioner (1) knowingly (2) either obtained, used, or possessed (3) cocaine, a fentanyl-related compound, and heroin. 2 OJI-CR 525.11. For the money laundering crime, the jury had to find Petitioner (1) conducted or attempted to conduct (2) a transaction (3) knowing the property involved in the transaction was the proceeds of illegal activity (4) with the intent to conceal or disguise the nature, location, source, ownership, or control of the property. Ohio Rev. Code § 1315.55(A)(2).

The support for Petitioner's insufficiency of the evidence claim is scant. First, it is based entirely on his argument that the trial court erred in admitting illegally obtained evidence at trial. Petition at 4, ECF No. 1. But when

considering whether sufficient evidence existed to support the convictions, this Court considers all the evidence admitted at trial, even if erroneously. *Davis v. Workman*, 695 F.3d 1060, 1078–79 (10th Cir. 2012) (citation omitted).

Second, Petitioner fails to articulate any element of any charge that lacks sufficient evidence; he instead implies generally that the jury could not have convicted him absent the illegally obtained evidence. *See generally* Petition at 4, ECF No. 1. The failure to develop the claim would alone be a reason to dismiss it, but, in an abundance of caution, the Court will review the argument as Petitioner raised it before the Fifth District. There, Petitioner argued:

> Several aspects of the State's case create credibility issues. The State introduced no evidence of controlled or direct buys involving Appellant. Also, the State apparently did little surveillance on the Roseville residence. Nor was any evidence introduced of unusual amounts of activity at that residence. Indeed, the only evidence of trafficking by Appellant came from Nicholas Sarvey, a convicted drug user who claimed he had told law enforcement about his claimed relationship with Appellant merely to be good citizen. (T. 253-266). Additionally, the State introduced no evidence that Appellant[']s fingerprints or DNA were found on any of the items seized from the Roseville address.

Ex. 23, ECF No. 15 at PAGEID # 175.

This argument lacks merit. Petitioner has cited nothing that suggests controlled or direct buys, fingerprint or DNA evidence, or "unusual" amounts of trafficking are necessary for convictions under Ohio Revised Code Sections 2925.03(A)(2), 2925.11(A), or 1315.55(A)(2). Nor has he cited any support for the proposition that the State cannot convict if there are credibility issues with its witness. Indeed, circumstantial evidence is sufficient to support a conviction

under Ohio law. *E.g. Umstead v. Black*, No. 20-4327, 2021 WL 2658059, at *2 (6th Cir. May 26, 2021) ("Despite Umstead's claims that there was no physical evidence, a court may sustain a conviction based upon nothing more than circumstantial evidence." (internal quotation marks and citation omitted)). And, as noted above, the credibility of witnesses is for the jury to decide; habeas courts do not re-weigh the evidence or assess credibility in considering sufficiency of the evidence arguments. *E.g., Middlebrooks v. Wainwright*, No. 3:19-cv-2759-JPC, 2022 WL 20304685, at *10 (N.D. Ohio Nov. 8, 2022), *R&R adopted by* 2023 WL 4010683 (N.D. Ohio June 15, 2023) ("[A]ttacks on witness credibility are simply challenges to the quality of the government's evidence and not to the sufficiency of the evidence." (internal quotation marks and citation omitted)). Moreover, constructive possession of drugs may sustain a conviction. *See, e.g., Pippen v. Bowen*, No. 18-3411, 2018 WL 5619967, at *2 (6th Cir. Oct. 15, 2018).

Further, a de novo review of the record shows the jury's verdicts were based on sufficient evidence. Cocaine, fentanyl, and heroin were recovered from searches of Petitioner's home, along with cash, an agent used for cutting drugs, and a digital scale and plastic baggies. ECF No. 15-2 at PAGEID # 503, 522–23, 550–72, 605–619. The State also presented text messages and Facebook conversations wherein Petitioner indicates he bought and sold drugs. *Id.* at PAGEID # 659–63. Additionally, Petitioner indicated during a recorded jail call that he sold drugs to pay for his home, *id.* at PAGEID # 682–83, and Nickolas

Sarvey testified that Petitioner sold him large quantities of methamphetamine and fentanyl. *Id.* at PAGEID # 633–36. This is sufficient for all the trafficking and possession convictions.

As for the money laundering, the State introduced jail calls wherein Petitioner asked his father to retrieve money from a safe inside a trash can in a storage unit. ECF No. 15-2 at PAGEID # 575–79, 677–79. The safe mentioned in the phone call was not found during a search of the storage unit but was found, with cash inside, in Petitioner's father's bedroom. *Id.* at PAGEID # 579–86. Because "transaction" is defined broadly under Ohio law to include a "transfer, transmission, delivery" or any other disposition of property, Ohio Rev. Code § 1315.51(L), the jury could infer from this phone call that Petitioner asked his father to remove drug proceeds to conceal their location from law enforcement. There was also evidence Petitioner made purchases with large sums of cash at Lowe's several days before a search warrant was executed, ECF No. 15-3 at PAGEID # 679–81, and he admitted in a jail call that he sold drugs to pay off his house, *id.* at PAGEID # 682–83. All of this is enough to support a money laundering conviction.

Petitioner's insufficiency of the evidence claim therefore fails on the merits, even under de novo review.

### D.  CONCLUSION

For the above reasons, the Court **ADOPTS** the R&R's recommendation and **DISMISSES** Petitioner's Petition, but for different reasons than set forth in

the R&R.  Further, the Court **DECLINES** to issue a certificate of appealability, **CERTIFIES** pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith, and **DENIES** Petitioner the right to appeal in forma pauperis.

The Clerk shall enter judgment for Respondent and dismiss this case.

**IT IS SO ORDERED.**

_____
MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT